IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Garren C.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civ. No. 1:18-cv-00860-MC

OPINION AND ORDER

MCSHANE, Judge:

On September 20, 2012, Plaintiff filed an application for benefits, alleging disability as of April 1, 2010. Tr. 139.[2] An Administrative Law Judge ("ALJ") denied the application in April 2015, finding the claimant not disabled under the Social Security Act. Tr. 139. In March 2017, after the Appeals Council remanded the ALJ's decision, a second ALJ found claimant was not disabled under the Act. Tr. 25. Plaintiff argues the ALJ erred in rejecting his subjective symptom testimony, in rejecting the examining medical source opinion of Dr. Shields and the treating medical source opinion of Dr. Tiffany, and in relying on Vocational Expert ("VE") testimony that differed from the Dictionary of Occupational Titles ("DOT"). This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

In a disability function report, Plaintiff alleged he stopped working due to his impairments. Tr. 346. During hearings, Plaintiff testified that he has always used his cane for the past five or six years. Tr. 54, 80. Plaintiff testified that aside from dropping off and picking up his children from school, he typically spends the rest of the day "[e]ither sitting down in my chair or laying back in my chair watching TV or on my phone, whatever, that's about it." Tr. 58–59. In October 2012, Plaintiff stated he was "a stay at home dad pretty much all the time, since 2008, since my injuries are affecting walking, caring, and communicating with people." Tr. 352. Plaintiff also testified as to the severity of his back, hip, knees, and left ankle pain, saying that his left side is "all messed up." Tr. 54–55. Plaintiff testified that poor communication hindered his ability to get jobs. Tr. 57.

The ALJ determined that Plaintiff had the following severe impairments: lumbar degenerative disc disease; left hip degenerative joint disease; left knee degenerative joint disease with meniscal tear; mild degenerative joint disease of the right knee; left ankle degenerative joint disease; affective disorder; traumatic brain injury resulting in expressive dysphasia; mild cognitive disorder; posttraumatic stress disorder; and insomnia. Tr. 27. At step 4, the ALJ determined that Plaintiff:

> can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. He can stand an/or [sic] walk for 2 hours and sit for up to 6 hours in an 8-hour workday, with normal breaks. He needs to use a cane to ambulate away from the work station and he should not push and pull with the left lower extremity. The claimant should not climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, balance, stoop, and crouch. He should not kneel or crawl and should not be exposed to moving mechanical parts or unprotected height hazards. The claimant should avoid noise above SCODOT level 3 (moderate noise) and is limited to simple, routine tasks that can be learned in 30 days or less. He is limited to isolated work, with no public contact, occasional direct co-worker contact with

no group tasks, occasional supervisor contact, and no telephone work. He is further limited to low stress work, with only occasional changes in the work setting, occasional changes in work duties, no conveyor-belt-pace work, and only simple work-related decisionmaking.

Tr. 30–31.

As noted, Plaintiff argues the ALJ erred in rejecting his subjective symptom testimony, in rejecting the opinion of treating physician Dr. Shields and the opinion of examining physician Dr. Tiffany, and in relying on VE testimony that differed from the DOT. I address each argument in turn.

### 1. The ALJ's Adverse Credibility Determination

The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)). Still, the ALJ must provide "specific, clear and convincing reasons" to discredit subjective symptoms testimony. *Vasquez v. Astrue*, 572, F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Charter*, 80 F.3d 1273, 1282 (9th Cir. 1996)). In formulating these reasons, the ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. Aug. 18, 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir.2007).

The ALJ in this case supported her credibility determination with references to several of the above factors:

Specifically, although the claimant alleged that he stopped working due to his conditions in his adult disability report, he testified that he stopped working at his last full-time job because he was passed over for promotions, not because he was physically unable to perform the work. The claimant testified that after he left his job with Adroit, he continued performing similar work as a self-employed contractor until 2012 when his VA disability benefits increased. Moreover, although the claimant testified that he has difficulty with his memory and concentration, he was able to continue performing this skilled work after his alleged onset date, when his impairments allegedly became disabling. This testimony that he continued working in the same type of skilled work and stopped working, not due to his condition, but because of a change in his financial situation, is not consistent with his allegation that he was unable to work due to his impairments.

Furthermore, although the medical evidence indicates that the claimant has neurocognitive impairment that limits his ability to communicate, the medical evidence indicated that these impairments were largely unchanged since 1988 and did not preclude him from performing skilled work as a carpenter on a regular, sustained basis after the injury. This evidence is not consistent with the claimant's testimony that he was unable to work effectively due to his difficulty communicating with others.

\* \* \* \*

Finally, the claimant's activities of daily living are not entirely consistent with his allegations of severe mental and physical impairment. The claimant's wife indicated that the claimant was able to attend their children's sporting events, feed and walk their dogs, take the children to school, do household chores including laundry and washing the dishes, run errands including going shopping, drive a car, manage finances, visit with friends and neighbors, and attend church services. Moreover, the claimant's medical records indicate that the claimant was more active than he alleged at the hearing. In an October 2011 visit, the claimant reported that he had moderately heavy callouses from cutting firewood; in February 2012 a treatment provider noted that the claimant remained "active" and was able to perform all of his own care; in April 2012 visit, the claimant reported that he had recently been "lifting beams"; in January 2016, the claimant reported that he tries to exercise regularly walking or with weights; in May 2016, the claimant's treating physician noted that the claimant was "fit-appearing;" and during a July 2016 examination, the claimant reported that he tries to stay physically fit". [sic] This evidence suggests that the claimant was more physically active than he alleged.

Tr. 35–36. (internal citations omitted).

The ALJ's reasoning above is supported by substantial evidence in the record. The record demonstrates that Plaintiff left his job at Adroit because he kept getting passed over for promotions, not due to his impairments. Tr. 53. While Plaintiff quit that job before the alleged onset date, he continued to work construction self-employed through 2012, over a year past the alleged onset date. Tr. 54–56. Plaintiff testified that this work was the "same thing" as his work at Adroit. Tr. 54. Here, the ALJ reasonably inferred that Plaintiff's ability to work past the alleged onset date contrasted with his testimony that he was no longer able to work past the alleged onset date due to his impairments. *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992).

At a hearing, Plaintiff testified that he stopped working self-employed construction in 2012 because he received an increase in his VA disability pension rate. Tr. 54. This contrasts with Plaintiff's earlier statement that he quit working due to his impairments. Additionally, an ALJ may point to the fact that a claimant quits working for reasons unrelated to any impairment in finding the claimant not entirely credible as to the extent of his alleged limitations. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

The record also supports the ALJ's conclusion that Plaintiff's daily activities were inconsistent with his subjective symptom testimony. As noted by the ALJ, Plaintiff's wife stated that he regularly took the dogs out, did the laundry, visited with friends, managed his own finances, drove a car, went shopping, and did the dishes. Tr. 353–362. In December 2011—over a year after the alleged onset date—a treatment provider stated that Plaintiff was active and fully took care of himself. Tr. 465. In April 2012, Plaintiff stated that he recently lifted beams. Tr. 434. An ALJ may point to such a contrast as evidence suggesting a lower level of pain and fewer limitations than alleged. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Likewise, the

ALJ did not err in noting that Plaintiff's daily activities, and the fact that he had "moderately heavy callouses from cutting firewood" contrasted with Plaintiff's testimony that other than taking his children to and from school, he spent his days "[e]ither sitting down in my chair or laying back in my chair watching TV or on my phone, whatever, that's about it." Tr. 58–59.

The medical record also supports the ALJ's credibility determination. Although medical evidence indicated that Plaintiff has a communication impairment, it has been mostly stable since Plaintiff's 1988 accident. Specifically, the record indicates that "there is no evidence that [Plaintiff's] language deficits have significantly worsened over the past 23 years. But that is expected because Traumatic Brain Injury is not a progressive disorder once the immediate risk of swelling and bleeding is past." Tr. 497. Plaintiff alleges disability as of 2010, over two decades after the motor vehicle accident where Plaintiff sustained a traumatic brain injury. Tr. 139, 497. The ALJ noted:

> Furthermore, although the medical evidence indicates that the claimant has [a] neurocognitive impairment that limits his ability to communicate, the medical evidence indicated that these impairments were largely unchanged since 1988 and did not preclude him from performing skilled work as a carpenter on a regular, sustained basis after the injury. This evidence is not consistent with the claimant's testimony that he was unable to work effectively due to his difficulty communicating with others.

Tr. 35 (internal citations omitted).

The ALJ properly supported her credibility determination with substantial evidence from the medical record, and thus this Court "may not engage in second guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

### 2. The ALJ's Rejection of Dr. Shields' and Dr. Tiffany's Opinions

*a. Dr. Tiffany's Opinion*

In November 2014, Dr. Tiffany—Plaintiff's treating psychiatrist—assessed Plaintiff's condition. The ALJ summarized Dr. Tiffany's opinion:

7 – OPINION AND ORDER

>In his statement, Dr. Tiffany indicated that the claimant's mental impairments were stable and included major depressive disorder, and cognitive disorder NOS with aplasia. . . . Dr. Tiffany generally opined that the claimant had some serious limitations, but was not precluded from performing unskilled mental work tasks; he was unable to meet competitive standards regarding his ability to deal with the stress of *semiskilled and skilled* work. However, Dr. Tiffany also opined that the claimant would miss about 3 days of work per month on average due to his impairments or treatment. Dr. Tiffany did not explain which impairments caused these limitations, but insinuates the limitations were related to the claimant's issues concentrating, remembering complex instructions, worsening tics, and stress.

Tr. 37. (internal citations omitted).

The ALJ gave partial weight to most of Dr. Tiffany's opinion, but little weight to the portion opining Plaintiff would miss about 3 days of work per month. Tr. 37.

Generally, a treating doctor's opinion is entitled to more weight than an examining doctor's opinion and a reviewing doctor's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). This is because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). However, when faced with conflicting medical evidence, the ALJ is charged with resolving that conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). And not every treating medical source opinion faced with conflicting medical evidence must be accepted. "When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ here supported her decision to give partial weight to Dr. Tiffany's opinion with reference to the factors above. Specifically, the ALJ noted Dr. Tiffany provided no explanation

regarding which impairment or impairments would cause Plaintiff to miss three days per month. Tr. 37, 774–778. Assuming Dr. Tiffany based this limitation on Plaintiff's mental impairments, the ALJ noted "this opinion would not be consistent with the claimant's history of maintaining consistent, skilled work for several years after his motor vehicle accident, after which his mental symptoms largely stabilized." Tr. 37.[3] As demonstrated above, this finding is supported by substantial evidence in the record. The ALJ reasonably rejected this portion of Dr. Tiffany's opinion as it was brief, conclusory, and unsupported by other evidence in the record. *Tonapetyan*, 242 F.3d at 1149.

As noted, the ALJ gave partial weight to the rest of Dr. Tiffany's opinion. The only aspect of that opinion precluding Plaintiff from competitive work was Dr. Tiffany's opinion that Plaintiff was unable to deal with the stress of skilled or semi-skilled work. Tr. 777. The ALJ limited Plaintiff to simple, routine tasks. Tr. 37. By limiting Plaintiff's work to these tasks, the ALJ accounted for Dr. Tiffany's opinion that Plaintiff was incapable of dealing with even semi-skilled work.

  b. *Dr. Shields' Opinion*

In December 2016, Dr. Shields examined Plaintiff. The ALJ summarized Dr. Shield's opinion:

> claimant's expressive language problems range from mild-to-moderate in severity; he had mild-to-moderate deficits in executive function such as mental flexibility, auditory-working memory, and visual-working memory; he was capable of understanding, remembering, and carrying out short and simple instructions immediately after presentation; he likely experiences moderate-to-severe impairment on following short, simple, instructions after a lengthy delay; he had moderate impairment in the ability to sustain concentration on tasks over extended periods of time; he had a low social frustration tolerance; and he had moderate-to-severe impairment in persistence and pace.

---

[3] To the extent Dr. Tiffany based this opinion on Plaintiff's physical impairments, the ALJ rejected the opinion because it was not "within Dr. Tiffany's area of specialty as a psychiatrist." Tr. 37.

Tr. 36–37. (internal citations omitted).

The ALJ gave minimal weight to Dr. Shields' opinion, finding it "is not generally consistent with the evidence of record including the claimant's ability to perform skilled work consistently for many years despite his mental limitations, which have been stable since the claimant's [Traumatic Brain Injury] in 1998." Tr. 37 (internal citation omitted).

Generally, an examining doctor's opinion is entitled to more weight than a reviewing doctor's opinion. *Garrison*, 759 F.3d at 1012. This is because 20 C.F.R. § 404.1527(c)(1) expressly provides for it. But as noted, when faced with conflicting medical evidence, the ALJ is charged with resolving that conflict. *Chaudhry*, 759 F.3d at 671. When an examining doctor's opinion conflicts with another doctor's opinion, an ALJ "may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. . . ." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

Here the ALJ provided such a summary. Dr. Shields documented issues with memory, understanding, and carrying out directions. Tr. 615. However, as noted, Plaintiff suffered these cognitive impairments in 1988 and his mental condition remained stable in the 20-plus years since that accident. Tr. 497. Additionally, Plaintiff performed skilled work as a carpenter and foreman for years after the accident (and past the alleged onset date). Tr. 53–57, 328–329. Because the medical record and Plaintiff's work history contrast with Dr. Shields' opinion, the ALJ did not err in discounting it.

### 3. The Vocational Expert Testimony

Plaintiff asserts that the ALJ erred when he relied on the testimony of the VE. Pl.'s Op. Br. 3. The VE testified that Plaintiff can work three occupations classified as "light" under the Dictionary of Occupational Titles. ("DOT"). Tr. 66. The full range of "light" occupations requires standing up to six hours per day. SSR 83-10. However, the ALJ determined that Plaintiff can stand no more than two hours per day. Tr. 30. The VE testified that the three occupations would allow a worker to sit or stand at will. Tr. 70. He based this testimony on his experience, job contacts, and work surveys. Tr. 70. Plaintiff argues that there is a conflict between this VE testimony and the DOT and that the VE merely provided a conclusory explanation for his deviation from the DOT. Plaintiff then concludes that the ALJ unreasonably relied on the VE testimony over the DOT and thus a remand is necessary.

*Massachi v. Astrue* provides clear guidance in resolving apparent or actual conflicts between the DOT and VE testimony:

> In making disability determinations, the Social Security Administration relies primarily on the *Dictionary of Occupational Titles* for "information about the requirements of work in the national economy." The Social Security Administration also uses testimony from vocational experts to obtain occupational evidence. Although evidence provided by a vocational expert "generally should be consistent" with the *Dictionary of Occupational Titles,* "[n]either the [*Dictionary of Occupational Titles*] nor the [vocational expert] . . . evidence automatically 'trumps' when there is a conflict." Thus, the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the *Dictionary of Occupational Titles*.

*Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (alterations and ellipses in original) (citations omitted).

Plaintiff is correct that an ALJ must find that a claimant can stand for six hours per day to deem them capable of the full range of light work. SSR 83-10. However, the

ALJ plainly stated that Plaintiff is not capable of the full range of light work. Tr. 40. What's more, the relevant regulation makes it clear that not every job classified as light necessarily involves standing for prolonged periods of time. "[A] job is in this [light] category when it requires a good deal of walking or standing, *or* when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (emphasis added). As the "or" above indicates, not every light job requires a good deal of walking or standing.

Thus, the operative question is not, as Plaintiff has framed it, if there is a conflict between the ALJ's finding that Plaintiff can only stand for two hours a day and the requirements to perform the full range of light work. The operative question instead is if there is a conflict between the VE testimony about the physical requirements of the three stated occupations the ALJ found Plaintiff capable of performing and the DOT's description of these occupations.

Turning to that question, the ALJ expressly stated that there was no conflict between the VE testimony and the DOT. Tr. 40. During the hearing, the ALJ asked for clarification from the VE because his testimony addressed workplace factors not directly addressed by the DOT for the positions provided by the VE. Tr. 70. The VE providing information supplemental to, but not necessarily in conflict with, the DOT listing. "For a difference between an expert's testimony and the [DOT's] listings to be fairly characterized as a conflict, it must be obvious or apparent." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). Because there is no obvious or apparent conflict between the VE testimony and the DOT listing, the ALJ did not err in relying on the VE testimony.

But even assuming there had been a conflict, the ALJ did not err in relying on the VE testimony over the DOT. The VE stated that the three occupations identified may be performed sitting or standing. Tr. 66–67. The VE testified that he based any departure from the DOT on his extensive education, experience, and employer contacts. Tr. 70. The VE explained the three jobs were "generally considered light . . . because these jobs are described as assembly which suggests standing all day, but in most of these type occupations, and the ones I gave you, the option to sit on a stool at a bench is there, so that's why it allows a sit/stand option." Tr. 68. While Plaintiff asks for more specific justification, Pl.'s Op. Br. 3, "[a] VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." *Bayliss*, 427 F.3d at 1218. The ALJ asked the VE about any possible conflict between his testimony and the DOT, and the VE assured the ALJ that his testimony was based on his own expertise. Tr. 70. Thus, the ALJ did not err in relying on the VE testimony.

## **CONCLUSION**

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 23rd day of December, 2019.

                                                                                          /s/ Michael J. McShane
                                                                                           Michael McShane
                                                                       United States District Judge